IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

**PENNY HELON NEWSOM,**

       Plaintiff,

v.

**CAROLYN W. COLVIN,** Acting
Commissioner of Social
Security,

       Defendant.

**No. 14-CV-3012-DEO**

**ORDER**

_____

    This matter is before the Court pursuant to Penny
Newsom's [hereinafter Ms. Newsom] application for Disability
Insurance Benefits under Title II of the Social Security Act
("Act"), and Supplemental Security Income ("SSI") benefits
under Title XVI of the Act. After considering the parties'
arguments, the Court took the matter under advisement and now
enters the following.

## I.  FACTUAL BACKGROUND

    Ms. Newsom was born on May 12, 1964, and was 48 years old
at the time of the hearing before the Administrative Law Judge
(ALJ). She lives in the Ft. Dodge, Iowa, area. Ms. Newsom
has limited education. She dropped out of school in 10th
grade, but received her GED in 1982. She also attended a

cosmetology course in Kansas. Ms. Newsom worked a variety of jobs over the years, including for a cleaning service and an adult care facility.

Ms. Newsom claims disability based on a number of conditions, including hypertension, gastroesophageal reflux disease, diverticulitis, bilateral knee arthritis, obesity, bipolar disorder, panic disorder without agoraphobia, and substance abuse.

## II. PROCEDURAL HISTORY

Ms. Newsom applied for disability insurance benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-434, 1381-1385, on November 4, 2010, and October 5, 2010, respectively, alleging an onset date of October 27, 2009. Plaintiff's claims were denied initially on February 16, 2011, and upon reconsideration on May 26, 2011. On October 26, 2012, following a hearing, the ALJ found that Ms. Newsom was not under a "disability" as defined in the Act. Ms. Newsom appealed the ALJ's decision to the Appeals Council, who denied her appeal on January 9, 2014. Ms. Newsom filed the present Social Security appeal on February 12, 2014.

The ALJ set out the issue presently before the Court:

> [t]he issue is whether the claimant is disabled under sections 216(I), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(I) and 223 of the Social Security Act are met. The claimant's earnings record shows the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2013. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

Docket No. 7, Tr. 9.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful

activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of their past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and lasts at least 12 months, a plaintiff is deemed

disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc) *abrogated on other grounds* by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if,

given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Ms. Newsom has not engaged in substantial gainful employment since October 27, 2009.

The ALJ stated that Ms. Newsom has the following combination of severe impairments: hypertension; gastroesophageal reflux disease; history of diverticulitis; bilateral knee arthritis; obesity; bipolar disorder; panic disorder without agoraphobia; and substance abuse (20 C.F.R. § 404.1520(c) and 416.920(c)).

However, the ALJ considered Ms. Newsom's impairments individually and combined and found that Ms. Newsom did not suffer from a disability as contemplated by the Social Security Code. Specifically, the ALJ stated:

> [t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,404.1526, 416.920(d), 416.925 and 416.926).

Docket No. 7, Tr. 12.

The ALJ considered Ms. Newsom's mental impairments using the "paragraph B" criteria and the "paragraph C" criteria as set out in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926), and determined that Ms. Newsom's mental impairments did not meet either set of requirements. Docket No. 7, Tr. 12-13.

The ALJ went on to consider residual functional capacity and concluded:

> [a]fter careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) involving lifting 20 pounds occasionally and 10 pounds frequently; standing and sitting 2 hours at a time for 6 hours in an 8 hour

7

> day; walking 2 blocks; never climbing
> ladders, ropes, or scaffolds; never working
> at heights; only occasionally climbing
> ramps and stairs; and only occasionally
> balancing, stooping, kneeling, crouching,
> crawling, and bending. The individual
> would be limited to simple, routine tasks.

Docket No. 7 Tr. 14.

The ALJ than considered the Plaintiff's credibility under

the <u>Polaski</u> standard and stated:

> [a]fter considering the evidence of record,
> the undersigned finds the claimant's
> medically determinable impairments could
> reasonably be expected to produce the
> alleged symptoms; however, the claimant's
> statements concerning the intensity,
> persistence, and limiting effects of these
> symptoms are not fully credible.

Docket No. 7, Tr. 17.

The ALJ found significant certain inconsistences in the

record, stating:

> [t]he record reflects the claimant made
> inconsistent statements regarding matters
> relevant to the issue of disability. For
> instance, the claimant testified she was
> capable of walking only about one-half
> block as she experienced difficulty with
> walking; yet, the claimant reported no
> difficulty with walking in a Functional
> Report. Examining sources observed normal
> gait and medical evidence of record
> revealed "good success" after knee
> injections. (Testimony, Exhibit 5E, and
> Exhibit 21F). At one point or another in

8

the record, either in forms completed in connection with the application, in medical records, or in testimony, the claimant reported she was capable of caring for her personal needs; caring for two grandchildren; caring for a pet; driving; performing household chores such as dusting, vacuuming, and doing laundry; watching television; and playing on the computer. The activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

Docket No. 7, Tr. 17. Similarly, the ALJ stated that he believed Ms. Newsom exaggerated her symptoms. Docket No. 7, Tr. 18.

The ALJ also emphasized perceived non-compliance with medication, stating:

[t]here is evidence that the claimant was not compliant in taking prescribed medications, suggesting symptoms may not have been as limiting as alleged. The claimant was advised to "restart" Seroquel and progress notes in September 2012 indicated the claimant had not utilized medication prescribed for hypertension for nearly one year. (Exhibit 21F) Evidence did not show the claimant did not have access to free or low cost medical services in accordance with the guidelines in Social Security Ruling 96-7p.

Docket No. 7, Tr. 18.

In considering the medical evidence, the ALJ gave little weight to the non-physician treating source, stating:

> [w]hile the undersigned considered the opinion of the nurse practitioner, it is emphasized the treating source is not an acceptable medical source. Acceptable medical sources include licensed physicians (medical or osteopathic doctors); licensed or certified psychologists (including school psychologists or other licensed or certified individuals with other titles who perform the same function in a school setting); licensed optometrists for measurement of visual acuity and visual fields; licensed podiatrists for impairments of the foot or foot and ankle; and qualified speech/language pathologists for speech and language impairments. (20 CPR 404.1513(a) and416.913(a)) In considering the opinion of the nurse practitioner, the undersigned notes that clinical records do not support the opinion given and, in fact, contradict the opinion. For example, the statement by the nurse practitioner indicating the claimant was "currently stable on medication regimen" contradicted the significant limitations included in the opinion. Moreover, the opinion was not well supported by generally normal findings on mental status examination which included good appearance, appropriate affect, cooperative demeanor, intact memory and insight, and no signs of hallucinations, delusions, or self-injurious behavior. Consequently, little weight is given to the opinion.

Docket No. 7, Tr. 18.

Similarly, the ALJ gave little weight to the portions of the opinions of Dr. Jordison and Dr. Porter which supported severe limitations for Ms. Newsom. Docket No. 7, Tr. 18-19. However, the ALJ gave great weight to the portions of those opinions which supported the ALJ's RFC determination. Id. The ALJ concluded:

> [i]n sum, no one doubts the claimant experiences some limitations. Yet, she demonstrated a capacity to complete simple, repetitive tasks on a sustained basis and this conclusion is supported by function report information as well as an examining source's opinion that the claimant can understand instructions presented in a straightforward manner. Furthermore, the claimant demonstrated an ability to get along with authority as documented in the medical evidence of record. Consequently, the above residual functional capacity assessment is supported by the objective medical evidence, the medical opinions when afforded appropriate weight, and the claimant's subjective complaints during the relevant period when taken in proper context. In view of all of the factors discussed above, the limitations on the claimant's capacities which were described earlier in this decision are considered warranted, but no greater or additional limitations are justified.

Docket No. 7, Tr. 21.

Based on his RFC, the ALJ concluded that Ms. Newsom could not return to past relevant work. Docket No. 7, Tr. 19.

However, based on the testimony of the vocational expert, the ALJ concluded that there were jobs in the national economy that Ms. Newsom could perform. Specifically, the ALJ stated:

> [t]o determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that, given all of these factors, the individual would be able to perform the requirements of representative occupations such as clerical assistant, Dictionary of Occupational Titles No. 239.567-010, light, unskilled, specific vocational preparation (SVP) of 2, representing 780 positions in Iowa and 83,000 positions nationally; cashier, DOT # 211.462-010, light, unskilled, SVP of 2, representing 44,000 positions in Iowa and 3,000,000 positions nationally; and sales attendant, DOT # 299.677-010, light, unskilled, representing 16,000 position in Iowa and 1,500,000 positions nationally... Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is, therefore, appropriate under the framework of the above-cited rule.

Docket No. 7, Tr. 20.

## III.   STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence in the record as a whole. See 42 U.S.C. § 405(g); Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question.  Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (citing Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)).  This Court must consider both evidence that supports and detracts from the ALJ's decision.  Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (citing Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)).  In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision.  Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004).  The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice."  Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir.

2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error. <u>Lauer v. Apfel</u>, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision. <u>Neal ex rel. Walker v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## IV. ISSUES

Ms. Newsom argues that the ALJ's hypothetical questions to the vocational expert did not include all of Ms. Newsom's limitations. Additionally, Ms. Newsom argues that the ALJ failed to give appropriate weight to the opinions of the treating mental health provider, and failed to explain adequate reasons for discounting her opinion.

## V. ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act]. The Act defines a disability as an:

> inability to engage in any substantial
> gainful activity by reason of any medically
> determinable physical or mental impairment
> which can be expected to result in death or
> which has lasted or can be expected to last
> for a continuous period of not less than 12
> months . . . .

42 U.S.C. § 423(d)(1)(A).

## A. Medical Evidence

The first argument the Court will consider is Ms. Newsom's contention that the ALJ improperly discounted certain medical evidence. Ms. Newsom argues that the ALJ improperly ignored the medical records and opinions from Kaye Cleveland, the nurse practitioner who treated Ms. Newsom at least eight times. Specifically, Ms. Newsom argues that:

> [o]n February 1, 2012[,] Ms. Newsom began
> seeing Kaye Cleveland, a nurse practitioner
> who owns Lincoln Mental Health, to deal
> with her depression and bipolar disorder.
> This record shows that Ms. Cleveland had
> eight total contacts with Ms. Newsom, six
> of which occurred before Ms. Cleveland
> completed a Mental RFC questionnaire for
> the claimant. AR 404-410... the ALJ
> discounts the opinion by the treating
> source, Ms. Cleveland, because she is,
> according to the rules of the Social
> Security Administration, not an "acceptable
> medical source."

Docket No. 9, p. 10, 11. Citing a recent ruling from Magistrate Judge Strand of this Court, <u>King v. Colvin</u>, No.

C13-3039-LTS, 2014 WL 1344194, at *5-9 (N.D. Iowa 2014), Ms.

Newsom goes onto argue that:

> [w]ithin [the context of Judge Strand's ruling] Ms. Cleveland's records should be analyzed. Ms. Cleveland became Ms. Newsom's mental health provider after what appears to be approximately a six month gap in service. Ms. Cleveland practices only as a mental health provider – specializing in mental health issues. Ms. Newsom's prior primary care provider was the Community Health Center, a general medicine practice providing health care in all arenas to the indigent Fort Dodge community. Ms. Cleveland's ideas for care may have differed with what had occurred before, in terms of the types of medications prescribed, but it certainly did not conflict with any prior evidence. Ms. Cleveland's analysis is much the same as Dr. Linda Iler, MD who first diagnosed Ms. Newsom with depression and a "rule-out" diagnosis for the bipolar-disorder in February 2008. Compare AR 277 with AR 414. The ALJ discounted Ms. Cleveland's opinion according to the decision because "the opinion was not well supported by generally normal findings on mental status examination which included good appearance, appropriate affect, cooperative demeanor, intact memory and insight and no signs of hallucinations, delusions or self-injurious behavior." AR 18. Yet, these findings are contained in Ms. Cleveland's Mental Status Examination. AR 422-23. They are also found throughout Ms. Cleveland's medical records. 425; 427; 430; 432; 434.

Docket No. 9, p. 14.

In response, the Defendant argues that:

> [t]he ALJ properly evaluated the medical
> source evidence from nurse Kaye Cleveland,
> a non-acceptable medical source...
> Evidence from other sources, such as a
> nurse, therapist, or a relative is also
> considered, but they are not acceptable
> medical sources... Here, the ALJ discussed
> and analyzed the evidence from Ms.
> Cleveland, and gave well-supported reasons
> for his conclusion that her opinion
> deserved little weight (Tr. 18)... [T]he
> ALJ noted that Ms. Cleveland's report was
> internally inconsistent (Tr. 18). She
> opined that plaintiff's impairments would
> cause her to miss three days of work per
> month, but she also stated plaintiff was
> stable on medications (Tr. 410)... The ALJ
> specifically observed that Ms. Cleveland
> conducted mental status examinations with
> largely normal results, including good
> appearance, appropriate affect, cooperative
> demeanor, and intact memory and insight...
> Ms. Cleveland's clinical notes do not
> support her opinion. For example,
> plaintiff argues that Ms. Cleveland
> included clinical findings that were
> consistent with her opinion... However,
> the records that plaintiff cites show that
> plaintiff had only mildly impaired
> attention and concentration, good
> appearance, appropriate affect, and intact
> memory and insight... However, Ms.
> Cleveland opined that plaintiff's mental
> impairments would cause her to miss three
> days of work per month. If Ms. Cleveland's
> statement meant what plaintiff claims, then
> her opinion is still internally
> inconsistent. Plaintiff provides no
> explanation for why her condition would
> worsen on only three days a month, given

> Ms. Cleveland's alleged opinion that she
> was not 'going up and down in her mental
> health cycle.'

Docket No. 11, p. 9-12.

It is beyond dispute that treating practitioners have the clearest insight into the medical conditions at issue in social security disability cases. As has been repeatedly stated:

> [t]he opinion of a treating physician
> should not ordinarily be disregarded and is
> entitled to substantial weight. A treating
> physician's opinion regarding an
> applicant's impairment will be granted
> controlling weight, provided the opinion is
> well-supported by medically acceptable
> clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in the record.

Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also 20 C.F.R. §404.1527(c)(2) and Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). Even if not entitled to controlling weight, in many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted. SSR 96-5p; see Reed, 399 F.3d at 920; 20 C.F.R. §404.1527(c)(2). The ALJ must "always give good reasons . . . for the weight [he gives the] treating source's opinion." 20 C.F.R. §404.1527(c)(2); see Singh, 222 F.3d at 452. In the

decision's narrative discussion section, the ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p.  Additionally, the opinions of an examining physician should be given greater weight than the opinions of a source who had not examined the claimant.  See <u>Shontos v. Barnhart</u>, 328 F.3d 418, 425 (8th Cir. 2003), citing 20 C.F.R. § 404.1527(d)(1) (now 20 C.F.R. §404.1527(c)).

The Plaintiff concedes that the ALJ and the Defendant are correct, and that Ms. Kaye Cleveland cannot be considered a treating sources under the rules, but argues that Ms. Cleveland's opinion is important because, as a matter of fact, she was the treating medical provider.

Although it runs contrary to the current trends in medicine, the social security regulations do not recognize nurse practitioners and physician's assistants as treating sources.[1]  Accordingly, Ms. Cleveland is 'another source'

---

[1]  Why the higher courts fail to recognize the equal protection issues implicit in denying treating source status to the providers most likely to provide treatment to poor people in rural areas is beyond the scope of the issues argued by the parties in this case.

under the rules.  The 8th Circuit has given explicit
instruction regarding the weight given to other sources:

> [o]n August 9, 2006, the SSA issued Social
> Security Ruling (SSR) 06-03p, 71 Fed. Reg.
> 45,593 (Aug. 9, 2006).  The ruling
> clarified how it considers opinions from
> sources who are not what the agency terms
> "acceptable medical sources."  Social
> Security separates information sources into
> two main groups:  acceptable medical
> sources and other sources.  It then divides
> other sources into two groups:  medical
> sources and non-medical sources.  20 C.F.R.
> §§ 404.1502, 416.902 (2007).  Acceptable
> medical sources include licensed physicians
> (medical or osteopathic doctors) and
> licensed or certified psychologists.  20
> C.F.R. §§ 404.1513(a), 416.913(a) (2007).
> According to Social Security regulations,
> there are three major distinctions between
> acceptable medical sources and the others:
> (1) Only acceptable medical sources can
> provide evidence to establish the existence
> of a medically determinable impairment,
> id., (2) only acceptable medical sources
> can provide medical opinions, 20 C.F.R. §§
> 404.1527(a)(2), 416.927(a)(2) (2007), and
> (3) only acceptable medical sources can be
> considered treating sources, 20 C.F.R. §§
> 404.1527(d) and 416.927(d) (2007).  Other
> sources:  Medical sources include nurse
> practitioners, physician assistants,
> licensed clinical social workers,
> naturopaths, chiropractors, audiologists,
> and therapists.  Non-medical sources
> include school teachers and counselors,
> public and private social welfare agency
> personnel, rehabilitation counselors,
> spouses, parents and other caregivers,
> siblings, other relatives, friends,

> neighbors, clergy, and employers. 20
> C.F.R. §§ 404.1513(d), 416.913(d) (2007).
> "Information from these 'other sources'
> cannot establish the existence of a
> medically determinable impairment,"
> according to SSR 06-03p. "Instead, there
> must be evidence from an 'acceptable
> medical source' for this purpose. However,
> information from such 'other sources' may
> be based on special knowledge of the
> individual and may provide insight into the
> severity of the impairment(s) and how it
> affects the individual's ability to
> function."

Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007). The Sloan

Court went on to say, "[i]n general, according to the ruling,

the factors for considering opinion evidence include: [h]ow

long the source has known and how frequently the source has

seen the individual; [h]ow consistent the opinion is with

other evidence; [t]he degree to which the source presents

relevant evidence to support an opinion; [h]ow well the source

explains the opinion; [w]hether the source has a specialty or

area of expertise related to the individual's impairment(s);

and [a]ny other factors that tend to support or refute the

opinion." Sloan, 499 F.3d at 889.

Although the Court cannot credit specific conclusions

regarding Ms. Newsom's ability to work, as that is a subject

left to the ALJ, the Court recognizes that Ms. Cleveland is

well acquainted with Ms. Newsom's situation. In her capacity

as a treating non-treating source, Ms. Cleveland opined that Ms. Newsom would likely miss at least three days of work a month. The Defendant argues that statement is not consistent for two reasons. First, the Defendant argues that Ms. Cleveland stated that Ms. Newsom was "currently stable" on her medicine, and, being 'stable' is inline with the ALJ's conclusion that Ms. Newsom is not disabled. However, that argument is faulty. As pointed out in the Plaintiff's reply brief, Ms. Cleveland's statement that Ms. Newsom was "currently stable" did not mean the same thing as if Ms. Cleveland said Ms. Newsom was 'normal.' Rather, giving it a plain meaning, currently stable means not getting any better, or any worse. Currently stable does not mean the same as normal, or healthy, or functional, as the Defendant implies. Second, the Defendant argues that there is no evidence that Ms. Newsom's condition would worsen on specific days such that she would miss up to three days a month. However, it is well accepted that mental disorders, by their very nature, ebb and flow. Put another way, some days are worse than others. Accordingly, Ms. Cleveland's statement that Ms. Newsom would miss up to three days a month is a statement regarding the symptoms of Ms. Newsom's mental impairments, not a disability related conclusion.

Looking at the <u>Sloan</u> factors discussed above, it is clear that Ms. Cleveland is a specialist with knowledge of mental impairments and her opinions are internally consistent and supported by the medical records. Additionally, Ms. Cleveland had a long relationship with Ms. Newsom, one of the longest relationships contained in Ms. Newsom's medical record. Finally, Ms. Cleveland's conclusions are not contrary to other medical opinions. As the ALJ admitted, both consultants, Dr. Jordison and Dr. Porter, concluded that Ms. Newsom would have problems with concentration, carrying out instructions, and working at steady pace. See Docket No. 7, Tr. 15-16. Additionally, although the Court notes that the Plaintiff in this case did not directly attack the ALJ's credibility determination, Ms. Newsom's allegations are consistent with Ms. Cleveland's record. Accordingly, the <u>Sloan</u> factors indicate that Ms. Cleveland's testimony is highly probative regarding Ms. Cleveland's ability to function and the ALJ's decision to give it little weight was an error.

**B. Hypothetical**

When questioned by the ALJ, the vocational expert described Ms. Newsom's past relevant work experience. The ALJ then posed a hypothetical based on the past relevant work.

Specifically, the ALJ asked:

> [f]irst hypothetical then would be age 48, female, she has a GED, past relevant work, 20 pounds -- let's see, 22E is past relevant work, lifting 20 pounds occasionally, 10 pounds frequently, sitting and standing two hours at a time for at least six out of an eight-hour day, walking two blocks, no climbing ladders, ropes, or scaffolds, no working at heights, only occasionally climbing of ramps and stairs, only occasional balancing, stooping, kneeling, crouching, crawling, and bending, would be limited to simple, routine tasks. Could the claimant do any of the past relevant work under this hypothetical?

Docket No. 7, Tr. 44.

The vocational expert answered in the affirmative, that Ms. Newsom would be able to perform various unskilled work. Docket No. 7, Tr. 44-45. The ALJ then asked two additional hypothetical questions. In the first, he described the same limitations but stated that the claimant would miss work several times a month due to drug use. The vocational expert testified in that event, the claimant would be unable to find work. Docket No. 7, Tr. 45. In the second, the ALJ stated the claimant would again miss several days of work a month, but did not give a specific reason. The vocational expert again testified that the claimant would be unable to find work. Docket No. 7, Tr. 46.

The Plaintiff's attorney then questioned the vocational expert and posed a hypothetical including the ALJ's limitations, quoted above, but then modifying the hypothetical that instead of missing three days of work:

> assume the same as the [ALJ's hypothetical limitations], except for that this person would for up to a third of the day work at a pace lower than what is required of the job. What would your analysis be then?

Docket No. 7, Tr. 46. The vocational expert responded that such a claimant would not be competitively employable. Id.

Ms. Newsom's attorney then asked the same hypothetical:

> taking away the missing three days of work, [but] let's assume that this person would require additional supervision to stay on task, need to be checked on, and also need somebody to help them out if they get in a stressful situations. What's your analysis?

Docket No. 7, Tr. 46.

In her brief, the Plaintiff argues that:

> [t]he error is that the ALJ completely ignores - in the hypothetical - any work restrictions stemming from his finding that there are "moderate difficulties" with concentration, persistence or pace... If the ALJ had included that type of language into the hypothetical question the VE could then have assessed the work and made a determination as to whether jobs were available.... [Additionally] [a] "moderate" capacity means different things to different people and without definition can not satisfy the requirement of being a question that adequately describes the

limitations of the claimant. It must be stated in terms of specific, work-related functional abilities... The effect of this is that the ALJ's hypothetical question is incomplete. As such, any testimonial responses by the Vocational Expert can not constitute substantial evidence. <u>Pickney v. Chater</u>, 96 F.3d 294, 296 (8th Cir. 1996). When the VE's response to an incomplete hypothetical question is based on a faulty determination of residual functional capacity the response can not be considered substantial evidence. As such, the decision based on the response by the VE is error.

Docket No. 9, p. 9-10.

As has been repeatedly stated, "[a] vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." <u>Buckner v. Astrue</u>, 646 F.3d 549, 560-61 (8th Cir. 2011). "[T]he hypothetical need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments." <u>Id.</u> (quoting <u>Hulsey v. Astrue</u>, 622 F.3d 917, 922 (8th Cir. 2010)).

The Defendant argues that:

plaintiff ignores that the ALJ's hypothetical question included a limitation to simple routine tasks (Tr. 44). The hypothetical question "need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete

consequences of those impairments."
<u>Lacroix v. Barnhart</u>, 465 F.3d 881, 889 (8th
Cir. 2006) (internal quotation marks
omitted)... Plaintiff has not shown that
the ALJ's hypothetical question should have
included additional limitations... The
ALJ's hypothetical question to the
vocational expert captured the credible,
concrete consequence of plaintiff's
impairments. Thus, the vocational expert's
testimony that plaintiff could perform the
jobs at issue constitutes substantial
evidence supporting the Commissioner's
decision that plaintiff was not disabled
(Tr. 33-34).

Docket No. 11, p. 7 - 9.

In the previous section, the Court stated the ALJ failed

to properly weigh the medical evidence from the non-acceptable

medical source. Based on that analysis, along with the

Plaintiff's above-quoted argument, the Court is persuaded that

the ALJ failed to properly articulate Ms. Newsom's limitations

in the hypothetical question(s) to the vocational expert. As

stated in Ms. Newsom's Reply brief:

[t]he ALJ made no attempt to define what he
may have meant by "simple routine tasks."
However, what is clear from the testimony
of the vocational expert is that "simple,
routine tasks" do not include a [moderate]
limitation on concentration, persistence or
pace. During the testimony of Melinda
Stahr, vocational expert, she acknowledged
when the ALJ limited the hypothetical to
"simple, routine tasks" the vocational
expert identified light jobs that could be
done: clerical assistant, cashier and
sales attendant. Yet when the claimant's

representative asked a question related to pace -still limiting the hypothetical question to "simple, routine tasks" but adding a condition with respect to "pace lower than what is required of the job" the vocational expert testified that in her opinion the individual would not be competitively employable. AR 346. This dramatically points out that - at least to this vocational expert - "Simple, routine tasks" must be performed at a certain pace. In this record the Defendant points to no other evidence which seems to suggest that "simple, routine tasks" includes a "moderate limitation on concentration, persistence or pace" - a finding that is made by three acceptable medical sources. Because there is no evidence to the contrary the ALJ committed error. The hypothetical question adopted by the ALJ as his finding was incomplete.

Docket No. 12, p. 1-2.

In finding that Ms. Newsom was not disabled, the ALJ relied on his first hypothetical question to the vocational expert. In that question, the ALJ included the phrase 'simple routine tasks' but offered no guidance on the degree that limitation effected or incorporated Ms. Newsom's work-pace. As stated in the Defendant's own brief, the hypothetical questions must capture the concrete consequences of the claimant's impairments. But that is exactly what the ALJ failed to do. The ALJ articulated specific physical limitations - which were not the major issue in this case - but then relied on the very vague 'simple, routine task'

phrase to convey Ms. Newsom's broad range of limitations. As stated in Plaintiff's Reply Brief, it is clear that the phrase "simple, routine tasks" assumed a certain pace or speed, because, when Plaintiff's attorney asked about a slower pace, the vocational expert gave a different answer. Relying on a hypothetical that failed to articulate specifics regarding pace, when a change in pace changed the answer to the hypothetical, was an error.

Because the hypothetical question relied on by the ALJ was vague, the hypothetical questions that most closely stated all of Ms. Newsom's limitations were those posed to the vocational expert by Ms. Newsom's attorney. Those questions incorporated a reduced pace, which is a limitation supported by the medical evidence. In response to those questions, the vocational expert stated that no jobs exist that Ms. Newsom could perform on a sustained basis. Docket No. 7, Tr. 46-47.

## VI. CONCLUSION

It is clear the ALJ erred by failing to incorporate all Ms. Newsom's restrictions into the hypothetical questions posed to the vocational expert and by discounting the opinion of the treating mental health provider. The question thus

becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits.

This Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing," but the Eighth Circuit has held that a remand for an award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability. 42 U.S.C. 405(g); Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing Thompson v. Sullivan, 957 F.2d 611, 614 (8th Cir. 1992).

The Court has considered the entire record, the parties' briefs, and the arguments presented at hearing. In this case, overwhelming evidence supports a conclusion that Ms. Newsom does not have the residual functional capacity to return to work. Specifically, the hypothetical questions posed by the Plaintiff's attorney to the vocational expert incorporated most of Ms. Newsom's medically determinable impairments. In response to those hypothetical questions, the vocational expert opined that Ms. Newsom would be unable to maintain employment. Accordingly, a finding of disability is appropriate.

**Therefore, the decision of the ALJ is reversed and remanded solely for the calculation of benefits from Plaintiff's claimed onset of disability.**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if plaintiff's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 19th day of March, 2015.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa